1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,      .
                               .
          Plaintiff,           .   CR No. 21-0503 (RCL)
                               .
     v.                        .
                               .
GLENN ALLEN BROOKS,            .   Washington, D.C.
                               .   Friday, September 13, 2024
          Defendant.           .   12:40 p.m.
. . . . . . . . . . . . . . . . . .

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE ROYCE C. LAMBERTH
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:          JOSEPH HUTTON MARSHALL, AUSA
                             VICTORIA A. SHEETS, AUSA
                             U.S. Attorney's Office
                             601 D Street NW
                             Washington, DC 20530

For Defendant:               ALEXIS M. GARDNER, AFPD
                             DIANE A. SHREWSBURY, AFPD
                             Federal Public Defender Office
                             625 Indiana Avenue NW
                             Suite 550
                             Washington, DC 20004

Court Reporter:              BRYAN A. WAYNE, RPR, CRR
                             U.S. Courthouse, Room 4704-A
                             333 Constitution Avenue NW
                             Washington, DC 20001

Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription.

P R O C E E D I N G S

THE DEPUTY CLERK:  Criminal case 21-503, United States of America versus Glenn Allen Brooks.  Counsel, please state your appearances for the record starting with the government.

MR. MARSHALL:  Good afternoon, Your Honor.  Hud Marshall for the government.  With me is AUSA Victoria Sheets.

MS. GARDNER:  Good morning, Judge.  Alexis Gardner and Diane Shrewsbury on behalf of Mr. Brooks, who is present.

THE COURT:  All right.  The first question is whether there are any objections I need to resolve from the presentence report.

MR. MARSHALL:  None from the government, Your Honor.

MS. GARDNER:  None from the defense, Your Honor.

THE COURT:  All right.  Then I'll adopt the findings and conclusions from the presentence report based on that. The total offense level would be 8, the criminal history category would be I, so the guideline provisions for counts 1 and 2 would be zero to six months.

The guidelines would not be applicable for counts 3 to 4, but the statutory provision would be a maximum of six months on supervised release for counts 1 and 2 -- the guideline provision would be one year.  For counts 3 to 4 supervised release is not applicable.  For probation, the guideline provisions for counts 1 and 2 would be one to five years and would not be applicable for counts 3 and 4.

The guidelines for counts 1 and 2 would be $2,000 to $20,000, and for Count 3 to 4 the statutory provision would be up to $5,000.  For restitution, $500 would be the applicable both statutory provision and guideline provision.  The special assessment for counts 1 and 2 would be $50 for each count, and for counts 3 and 4 it will be $25 for each count.  That would be both the guideline provisions and the statutory provisions.

So the court, having then determined the guidelines, which it has to do first, the court will determine the sentence in accordance with the statute, 18 U.S.C. § 3553, as well as the advisory guidelines, and I'll hear allocution with the government first and then from the defendants.

I've had the very helpful memoranda filed by each side, and I have of course read the letters submitted by the defendant as well.  I sat through the trial, so I know what the trial testimony was; but I'll hear anything further either side wants to make, and then I'll hear from the defendant last before pronouncing sentence.  The government may proceed.

MR. MARSHALL:  Thank you, Your Honor.  Given what's already been presented to the court, I won't give a long exposition here.  I just want to highlight two things that are important considerations for this court in underscoring, I think, the need for some sense of incarceration to reflect the seriousness of the offense, specifically the need for specific deterrence given what, in the government's view, is a

remarkable lack of remorse and willingness to take accountability for one's actions by the defendant.

Here Brooks, in his sentencing memo and in his statement to Probation, talks about how he misunderstood what was happening that day when he joined that riot and entered the Capitol, that when he approached that Senate Wing door and observed the scene and the rioters, that he thought if it had been unlawful for them, the rioters, to be inside or expect law enforcement to direct them leave or at least appear contentious with their presence.  So he misunderstood that aspect of it.

But Brooks knew full well that he was not allowed to crawl inside a broken window inside the United States Capitol building that day.  I think it's important to think about what he did and what he would have seen in the lead-up to that moment when he's looking up at that Senate Wing door area.

You can look at when he first approached the restricted perimeter and saw rioters turn over a bike rack, lean it up against the wall, and use that to crawl over on the restricted perimeter.

You saw that he took a photo when he got a little bit farther onto the northwest lawn, took a photo of rioters that had overrun the Upper West Terrace northwest lawn.  He circled all the way around the north side of the building then came back to get to that Upper West Terrace.  And then when he's

finally up there, he walks past a line of riot police, gets there, he approaches the building, sees that broken glass, would have heard the alarm going overhead, would have seen the mob overrunning it inside.  And he says, as a construction worker, going in and out of windows, crawling in attics and under raised floors, that is tradecraft and not untoward as perhaps the common person might consider it when talking about why he thought it was perhaps more permissible to crawl through a broken window into the Capitol building.

I think this is an absurd excuse, frankly, Your Honor. Mr. Brooks is an intelligent man who has functioned in society his entire life.  He knows it's not acceptable to crawl through a broken window into the U.S. Capitol, and the court shouldn't abide this characterization in giving Brooks the probationary sentence he asks for.

I also want to briefly remark on Mr. Brooks' intent that day.  Again, in his statement to the court in his sentencing memo, Brooks represents himself and is portrayed by counsel as having peaceful, nonviolent intentions.

And it's certainly true that Mr. Brooks himself did not commit any acts of violence personally at the Capitol that day, but his statements surrounding January 6 totally contradict that characterization of himself, that he possessed this entirely separate, nonculpable, purely peaceful intent compared with the other rioters there that day.

You can look at this in the days immediately following January 6 where he discusses how, on the way back up to the West Coast, that civil war was imminent and states, quote, a civil war in U.S. is probably viewed not as Democrat vers GOP, not liberal vers conservative, but in my honest opinion good vers evil, truth vers what we have and the stolen election was having fight forced upon us. And he says his side in this conflict would clearly win because, quote, we are the Second Amendment side with guns and tactics.

And we know these aren't purely empty words by the defendant either. You know when he flew from the West Coast to the East Coast before going to D.C., he bought three compact handguns, in part because they could be concealed and carried undetected under a coat.

MS. GARDNER: Objection, Your Honor. None of this was ever admitted into the trial, and I don't think it's appropriate here.

THE COURT: Overruled.

MR. MARSHALL: And, Your Honor, I'm happy to show texts that would prove this if this is -- these are statements by Mr. Brooks that defense is gonna challenge that he did not make.

And that's not to say any of this is illegal, purchasing guns to carry -- to conceal/carry under one's coat. And that's not to say that he did so when he went to the Capitol on January 6, but this is to emphasize that this extreme

rhetoric by Brooks about civil war, about being on the side of guns, the Second Amendment side, it's extremely concerning when discussed in the context of Brooks participating in this violent mob on January 6 in the context of this intent to disrupt the peaceful transfer of power.

And Brooks held those fervent beliefs, contemplated violence, talked about civil war in relation to those beliefs, and it was beliefs like that that I think drove him to join that riot that halted Congress from certifying the election that day despite knowing full well that he was not permitted to be there.

And so looking at those 3553(a) factors, this court should impose a substantial term of incarceration to reflect the nature and circumstances of that offense and to deter Brooks from engaging in such conduct in the future, and of course to promote respect for the rule of law.  Unless the court has any questions, thank you.

THE COURT:  Thank you.

Ms. Gardner?

MS. GARDNER:  Thank you, Judge.  Frankly, I think the government's ask for the statutory max in this case is highly unreasonable.  I've been in a couple sentencings this week so far, Your Honor.  On Wednesday I was in a sentencing in front of Judge Cobb on Mr. Antonio Lamotta, and he was convicted after trial not only of these same misdemeanors, but also a

civil-disorder felony.  And he was sentenced to six months, and his conduct was far more egregious.  He was waving people into the Capitol, pushing people into police.

So to hear the government ask for a statutory max for a man who, yes, he crawled through a window and he was where he wasn't supposed to be but he didn't engage in any of that, for him to have the same punishment as someone who's been convicted of a felony, who's actually engaging in police and waving rioters into the Capitol, I just think that's -- it's unreasonable.  It doesn't feel just or in line with the Department of Justice.  I know that traditionally for first-time offenders --

THE COURT:  Sounds like to me the guy before Judge Cobb should have had a couple of years, at least.  So I'm not sure I'm going to equate those two.  I don't know what the maximum was there, but it doesn't sound like the kind of case I would have given six months to.  So I'm not sure you're off to a great start there.

MS. GARDNER:  Well, Your Honor, this isn't the type of case you should give six months to either.

THE COURT:  I mean, I'm sorry, but I just -- I would never have given six months to those facts you just gave me.

MS. GARDNER:  Okay.  Well, fair enough.

THE COURT:  Assaulting police I don't believe I've given below four years to yet.

MS. GARNDER:  I'm sorry, what?

THE COURT:  I don't think assaulting police I've given less than fours to on a guilty plea yet.  I've given all the way up to 20 years.  So I don't think, when you start talking like that, I know six months wouldn't be in the ballpark.

MS. GARDNER:  He wasn't convicted--

THE COURT:  He was shoving.

MS. GARDNER:  Not him directly.  So that's why he wasn't even charged with assault.  But I understand, Your Honor.  What I'm saying is Glenn Brooks pales in comparison to that.

THE COURT:  I understand.  But none of them pale in comparison to what happened that day.

MS. GARDNER:  Understood, Your Honor.  And I was just going to get to that.  Obviously, traditionally first-time offenders who get convicted on misdemeanors don't usually go to prison, and January 6 is the exception.

THE COURT:  Not with me.

MS. GARDNER:  January 6 is the exception, right --

THE COURT:  Right.  Correct.

MS. GARDNER:  -- because it was so --

THE COURT:  Correct.  Because it threatened our whole republic.

MS. GARDNER:  Of course, Your Honor.  And I know you're a reasonable man, and that's why you've dealt out the

punishment you have in accordance with January 6 misdemeanants. I think it was an exceptional day, but Mr. Brooks is also an exceptional defendant.

THE COURT:  I agree with that.

MS. GARDNER:  I don't know how many people you've had in front of you that are humanitarians and go to such --

THE COURT:  I agree with that.

MS. GARDNER:  -- dangerous places like Haiti over thirty times, money he's spending from his own pocket.  He gets nothing out of this.  He's retired now.  He should be enjoying his golden years on a beach or a ranch, or what have you, but he's in Haiti on the ground.

And you saw the 14 letters from upstanding members of our community, doctors who are also volunteering in Haiti, pastors, people all around this country, Your Honor, who all say that basically these events are not in line with his character.

And when we think about the reasons for prison, right, we have incapacitation, right, protect society from the person. Society doesn't need protecting from Mr. Brooks, right?  We have deterrence, general and specific deterrence, like the government talked about.  I think with general deterrence it wasn't like he was so notable like one of the shaman or one of those other notable figures we think about when we think about January 6.  So I don't think society is deterred whether this

man goes to prison or not.  I don't think he needs specific deterrence because this whole process and now him being convicted of a crime has been all the deterrence he needs.

And so that leaves us with punishment, right?  That's what him going to prison would be, punishment.  But, Your Honor, I would submit to the court that this man has been punished severely.  You know, in the PSR it outlined how his wife left him in just a couple weeks after he was arrested in this case, his wife of decades and decades.

They ended up selling their home at a like half-a-million-dollar loss, the home they raised their children in.  And he's still in love with that woman.  So his whole personal life has been dissolved to nothing, Your Honor.  So he has endured punishment in relation to the actions that he chose on that day.

In regards to the government's comment about remorse, I think -- you know, that's an issue of semantics when he talks about what he misunderstood.  But he does, more than once, talk about how much remorse he has for that day and how much he learned in the trial and how he wished he wouldn't have been a part of that and what the police officers had to experience that day.

So I think that while he talks about misunderstanding, that he was there for a nonviolent protest, I don't think that shows any hubris or lack of remorse.  I think he's just

explaining that -- you know, he's explaining his poor decisionmaking.

In closing, Your Honor, not only would him going to prison prevent minimum from assisting in Haiti and Ghana and continuing his efforts to make this world a better place and to help those in need who other people aren't really concerned about, it's also a waste of tax dollars to send this man to prison.  I don't think jail cells are meant for people like Mr. Glenn.

I understand your point about how serious this was, Your Honor.  And like I said, I respect the sentences you've given out before, but again, he's different.  He's different because of his works.  And so we ask for you to render a probationary sentence, Your Honor.

THE COURT:  Thank you, Ms. Gardner.

All right.  Mr. Brooks, if you'd come forward.  I know you'd be nervous at a time like this, but anything you'd like to say I'm certainly interested in hearing.

THE DEFENDANT:  Yes.  Thank you, Your Honor, for the opportunity.  I was wondering if that was just on TV or for in real life people have a chance to address the court.

About three years ago, I met you across the hallway over there, and you said, stand up here, I want to get a look at you, and I kind of fell in love with you at that point.  I had told you, Your Honor -- love you in Christ, that is -- that I

had done a little research, found out you were from Texas, you're in the Army, Reagan appointee, and how I appreciated those things. You seemed to me like you blushed a little bit and said, well, I'd only been in the Army a couple years in Vietnam.

On one occasion during the many status conferences, Your Honor, as I was trying to find legal counsel that would actually fight for me, I sat in the back of your courtroom here and watched you sentence a fine young man, and you commended him. And the defense attorneys asked for probation, and you said, you know, this is a fine young guy, but he beat a cop with a flagpole, and I can't let him go for that.

And, Your Honor, how you proceeded to sentence him caused me to speculate kindness, compassion. And I then wondered, Your Honor, if you'll excuse me, if you believed in Jesus. And I was seeing what in the Christian community is called the "fruit of the spirit." And I've wondered, and I've gone back and forth a few times. I'm wondering if you know Jesus Christ as your personal lord and --

THE COURT: I can't quite hear you.

THE DEFENDANT: I'm wondering, Your Honor, if you know Jesus Christ as your personal lord and savior. I certainly want to encourage everyone in the courtroom, everyone within hearing of my voice, "to be as I am, except for these chains" is something that I believe as Apostle Paul said as he was

being on trial.

Your Honor, I did misunderstand what was going on in that courtroom.  I stood outside.  I wish I'd testified that day, Your Honor, during the trial.  I stood outside the Capitol window, and I was trying to determine why all these people were running around and the police officers were not doing anything, and it was confusing me.  So I recognize that I had a reasonable doubt.

And had I known what I would see later that day on television, there's no way that I would have gone in there. I am very sorry that I have troubled the people of the United States and you specifically.  I've really appreciated working with you, Your Honor, but I wish I hadn't made the decisions that I did that day.  I think that's all I've got to say.

THE COURT:  All right.  You can stay here because I'm going to go ahead.

Pursuant to the Sentencing Reform Act of 1984, in consideration of the provisions of 18 U.S.C. § 3553, as well as the advisory sentencing guidelines, it is the judgment of the court that you, Glenn Brooks, are hereby sentenced to concurrent terms -- I'm sorry -- I got the wrong wording here. Just a minute.

Sentenced to six months of incarceration followed by one year of supervised release, 60 hours of community service. In addition, you're ordered to pay special assessments totaling

$150 in accordance with 18 U.S.C. § 3013.

While on supervision, you shall abide by the following mandatory conditions as well as all discretionary conditions recommended by the probation office in Part D Sentencing Options of the presentence report which are imposed to establish basic expectations for your conduct while on supervision.  Mandatory conditions include:

(1) you must not commit another federal, state, or local crime;

(2) you must not unlawfully possess a controlled substance;

(3) you must refrain from any unlawful use of a controlled substance.  You must submit to one drug test within 15 days of placement on supervision, and there it lists at least two periodic drug tests as determined by the court;

(4) you must make restitution in accordance with 18 U.S.C. § 3663 and 3663A or any other statute authorizing restitution.

You shall comply with the following special conditions:  You are ordered to make restitution to the Architect of the Capitol in the amount of $500.  The court determines you do not have the ability to pay interest and therefore waives interest on any penalties that may accrue to restitution.

Restitution payments shall be made to the Clerk of the Court, U.S. District Court, District of Columbia, for disbursement to the following victim:  Architect of the Capitol, $500, Office of the Chief Financial Officer, Ford House Office Building, Room

H2-205B, Washington, D.C. 20515.  You're also ordered to pay a fine of $1,000.  The court determines you do not have the ability to pay interest and therefore waives interest on any penalties that may accrue on the balance.

Other conditions on supervised release:  You must pay the balance of any financial obligations at a rate of no less than $250 each month, to commence 30 days after release from imprisonment to the term of supervision.

You must provide the probation officer access to any requested financial information and authorize release of any financial information.  The probation office may share financial information with the U.S. Attorney's Office.  You must not incur any new credit charges or open additional lines of credit without the approval of the probation office.

You shall remove firearms, destructive devices, or other dangerous weapons from areas over which you have access or control until the period of supervision expires.

You must not knowingly enter the United States Capitol building or otherwise surrounding grounds known as Capitol Square and consisting of the square block bounded by Constitution Avenue Northwest and Northeast, to First Street Northeast and Northwest, to Independence Avenue Southeast and Southwest, to First Street Southwest and Northwest comprising the property under any circumstances without first obtaining the permission of the probation office and/or the court.  You

must not knowingly enter the District of Columbia without first obtaining the permission of the probation officer and/or the court.

Financial obligations are immediately payable to the Clerk of the Court, U.S. District Court, 333 Constitution Avenue NW, Washington, D.C. 20001.  Within 30 days of any change of address, you shall notify the Clerk of Court of the change until such a time as the financial obligation is paid in full.

Probation office shall release the presentence investigation report to all appropriate agencies, which includes the probation office in the approved district of residence, in order to execute the sentence of the court.  Treatment agencies shall return the presentence investigation report to the probation office upon the defendant's completion or termination from treatment.

You have the right to appeal your conviction to the U.S. Court of Appeals for the D.C. Circuit.  Pursuant to 18 U.S.C. § 3742(a), you also have the statutory right to appeal your sentence to the D.C. Circuit under certain circumstances including if you think the sentence was imposed in violation of law or as a result of an incorrect application of the sentencing guidelines or is more severe than the maximum established in the guideline range.  You may also appeal your sentence if you believe you received ineffective assistance of counsel at sentencing.

Pursuant to 28 U.S.C. § 2255, you also have the right to challenge the conviction entered or sentence imposed to the extent permitted by the statute. Any notice of appeal must be filed within 14 days of the entry of judgment or within 14 days of the filing of a notice of appeal by the government. If you're unable to afford the cost of an appeal, you may request permission from the court to file an appeal without cost to you. On appeal, you may also apply for a court-appointed counsel.

I find that the defendant's lack of accountability, the fact that he should be incarcerated through the next election cycle to ensure that there is no repeat performance and the lack of a respect for law enforcement, the preposterous statements that he has made about why he entered through a broken window and crossing police lines to enter the building and go through the building and remain in the building, and although he did not himself engage in violent acts, was present as violent acts were committed so that the building could be breached and his really lack of understanding of the serious consequences of what happened that day, and what could happen on the next election day and the election cycle gives me pause that he should not be free in our society without paying a serious consequence so that he understands our country cannot exist and there has to be a court that holds people accountable in his situation.

I understand he and I differ on that question. I admire and respect what he has done with his life otherwise than in this

circumstance, and I have given him leave every time to go do the terrific things he has done in Haiti, and I do admire and respect the things he is doing in his life.  But the court cannot walk away and not do what the court thinks is its obligation.  So more power to you in your other endeavors in life, other than this one, Mr. Brooks.

THE DEFENDANT:  Thank you, Your Honor.

THE COURT:  I have to say to counsel on the record, is there an objection you need to make on the record about the sentence as imposed that have not already been noted on the record or under *U.S. v. Hunter*, 809 F.3d 677?

MS. GARDNER:  Yes, Your Honor.  For the record, we do object.  The sentence didn't take into account the arguments raised in the memo or in allocution.  Thank you.

THE COURT:  The government?

MR. MARSHALL:  No objection, Your Honor.

THE COURT:  Okay.  And anything else?

MS. GARDNER:  Your Honor, we would ask --

THE COURT:  Any recommendations?

MS. GARDNER:  Yes.  FCI Petersburg.  And we would ask that he be able to self-surrender in approximately 30 days, please.

THE COURT:  Okay.  Self-surrender is denied in light of the timing.  Petersburg I'll recommend.  The defendant's remanded.  The Court will be in recess.

DEPUTY CLERk:  All rise.

MS. GARDNER:  Your Honor, can we just say on record the government hasn't asked for him to be detained.

THE COURT:  I don't care what the government asked.

DEPUTY CLERK:  This Honorable Court will stand in recess.

(Proceedings adjourned at 1:08 p.m.)

* * * * * *

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.


/s/ Bryan A. Wayne
Bryan A. Wayne